Michael A. DeLUZIO

v.

MONROE COUNTY; Monroe County Children and Youth Services; Christina Iacano; Sat P. Bahl; Paul J. Seybold; Richard Bielat and Robert Gress

Sat P. Bahl, Appellant in 06–4934

Michael A. DeLuzio, Appellant in 06–5044.

Nos. 06–4934, 06–5044.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) Jan. 15, 2008.

Filed: March 31, 2008.

Peter G. Loftus, Loftus Law Firm, Waverly, PA, for Michael A. DeLuzio.

Hugh J. Hutchison, Leonard, Tillery & Sciolla, Philadelphia, PA, for Appellant.

Before: BARRY, CHAGARES, and ROTH, Circuit Judges.

## OPINION OF THE COURT

CHAGARES, Circuit Judge.

From 1992 until 1999, Michael DeLuzio served as a caseworker for Monroe County Children and Youth Services (CYS). CYS fired DeLuzio in 1999, ostensibly for insubordination. DeLuzio then brought this action, alleging a host of constitutional and statutory violations in connection with his failure to be promoted while at CYS, his termination by CYS, and subsequent interference by CYS and its employees in DeLuzio's pursuit of other jobs. The procedural history of this case is long and complex, but the resolution of these appeals is simple. The District Court expended a significant amount of time and energy on this case, and navigated through multiple claims and motions with accuracy and aplomb. We will affirm its decisions in their entirety.

### I.

Sat Bahl became CYS's Administrator in July 1996. As Administrator, Bahl supervised all CYS employees, had authority to hire and suspend employees, and could recommend that employees be fired, although the final authority for termination rested with the Monroe County Commissioners. Despite his junior status, DeLuzio often clashed with Bahl and others over CYS's provision of services to its clients and its internal policies and procedures. DeLuzio made his opinions on these mat-

ters known to his superiors at CYS repeatedly and insistently, often by writing memos outlining the problems he saw with CYS's operations and the treatment strategies for clients of other caseworkers.

In November 1997, DeLuzio sought but was passed over for a promotion to become a higher-level caseworker. In November 1998, DeLuzio again sought promotion, this time to become a Program Manager. Again, he was rejected, and Christina Iacano was promoted instead, although she had been with CYS for just a few months. Moreover, on at least two occasions, Bahl recommended that DeLuzio be disciplined. On each occasion, however, the disciplinary action was reversed and expunged from DeLuzio's record because after DeLuzio challenged the actions, the reviewing authority found DeLuzio's underlying conduct to be appropriate.

DeLuzio's memos (often written to Bahl) increased in frequency after Iacano's promotion to Program Manager, and began to include DeLuzio's opinions on how CYS's Family Preservation unit should be operated. On February 18, 1999, Bahl suspended DeLuzio without pay, "pending investigation of possible misconduct." Bahl did not justify the suspension until over 30 days later, and then, on March 26, 1999, wrote DeLuzio a letter stating that the suspension had been related to DeLuzio's file-keeping methods and his "daily bar-

rage of 'Memo's' demanding audiences, meetings, apologies, etc. [which had] become insubordination." DeLuzio, Bahl, and the union steward then had a meeting regarding Bahl's allegations, at which DeLuzio was given the opportunity to challenge the conclusions of the March 26, 1999 letter. By letter dated April 7, 1999, Bahl informed DeLuzio that he was terminated. This action followed.[1]

## II.

After several preliminary opinions by the District Court that narrowed the case's scope,[2] the remaining issues went to trial in March 2005. The District Court granted judgment as a matter of law in favor of the Defendants on several claims at the close of DeLuzio's case and then sent four claims to the jury: two First Amendment retaliation claims against Bahl (for failure to promote and for termination); a Fourteenth Amendment procedural due process claim against Bahl, Bielat, and Iacano; and a claim that these three individuals conspired to deprive DeLuzio of due process.

The jury found in favor of Bahl on the failure to promote retaliation claim, but rendered a verdict against the defendants on the other three claims and imposed punitive damages against Bahl on the termination retaliation claim. Defendants re-

---

1. The District Court had jurisdiction over the federal constitutional and civil rights claims pursuant to 28 U.S.C. §§ 1331 and 1343, and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367. We have jurisdiction pursuant to 28 U.S.C. § 1291.

2. DeLuzio originally asserted seventeen claims, in eight counts, against a total of seven defendants. On December 6, 2001, the District Court granted defendants' motion to dismiss completely Count I (DeLuzio's claims based directly on amendments to the U.S. Constitution), Count V (DeLuzio's wrongful

discharge claim) and removed CYS as a defendant. The Court also dismissed parts of Count II (DeLuzio's § 1986 claim and the Fourth and Fifth Amendment aspects of his §§ 1983, 1985, and 1988 claims) and dismissed the federal claims against Monroe County. On March 30, 2004, the District Court dismissed more of Count II (the substantive due process claim) and part of Count VI (the intentional interference with contractual relations claim as to Monroe County). On December 9, 2004, the District Court granted defendants' motion for summary judgment on Count VIII (discrimination based on military preference).

newed their motions for judgment as a matter of law after trial, and the District Court granted relief to Bahl, Bielat, and Iacano on the due process and civil conspiracy claims. Thus, DeLuzio ultimately succeeded only on the First Amendment retaliatory discharge claim against Bahl.

Bahl and DeLuzio have now filed cross appeals. Bahl asserts, first, that the District Court erred by denying him judgment as a matter of law on the issue of whether DeLuzio's speech was a protected activity. Bahl also claims that the District Court erred by finding that sufficient evidence supported the jury's verdict on three issues: that DeLuzio's protected speech was a substantial factor in Bahl's termination recommendation; that Bahl's recommendation was a cause of DeLuzio's termination; and that punitive damages were warranted. DeLuzio appeals the District Court's post-trial grant of judgment as a matter of law on the procedural due process and civil conspiracy claims.

### III.

■ We deal first with the District Court's decisions on the parties' motions for judgment as a matter of law. In so doing, we exercise plenary review. *See Curley v. Klem,* 499 F.3d 199, 205 (3d Cir.2007). First, we hold that the District Court properly denied Bahl's motion for judgment as a matter of law that DeLuzio's speech was not protected by the First Amendment. To state a First Amendment retaliation claim, a public employee plaintiff must allege: (1) that the activity in question is protected by the First Amendment, and (2) that the protected activity was a substantial factor in the alleged retaliatory action. *See Phyllis Hill v. City of Scranton,* 411 F.3d 118, 125 (3d Cir. 2005). "The first factor is a question of law; the second factor is a question of fact." *Hill v. Borough of Kutztown,* 455 F.3d 225, 241 (3d Cir.2006).

A public employee's statement is protected activity "when (1) in making it, the employee spoke as a citizen, (2) the statement involved a matter of public concern, and (3) the government employer did not have 'an adequate justification for treating the employee differently from any other member of the general public' as a result of the statement he made." *Id. (quoting Garcetti v. Ceballos,* 547 U.S. 410, 418, 126 S.Ct. 1951, 1958, 164 L.Ed.2d 689 (2006)). When a public employee makes a statement pursuant to his official duties, he does not speak "as a citizen." *Ceballos,* 126 S.Ct. at 1960. "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Rankin v. McPherson,* 483 U.S. 378, 384, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987) (quotation marks omitted).

DeLuzio's speech was protected by the First Amendment. DeLuzio did not have professional responsibility, or "official duties," over any of the topics covered in his memos. His superiors' problems with DeLuzio stemmed precisely from his frequent and unwelcome comments on matters that the supervisors felt were not within DeLuzio's purview—such as the course of treatment for other caseworkers' clients, or operating procedures that DeLuzio thought were harmful but was without power to change. Indeed, Bahl contends in his brief that "DeLuzio engaged in a course of conduct wherein he routinely commented on anything and everything involving [CYS], whether or not he had any direct responsibility for those issues or the involved clients." DeLuzio's comments were directed towards the effect of CYS's actions and inaction regarding the welfare of children under the supervision of Monroe County and the potentially improper or dangerous operations of CYS. These are certainly on topics of public

concern, defined as those which "relat[e] to any matter of political, social, or other concern to the community." *Green v. Phila. Housing Auth.*, 105 F.3d 882, 885–86 (3d Cir.1997). Finally, Bahl has not provided any justification for his treating De-Luzio differently from any member of the public regarding DeLuzio's comments.[3]

■ Next, we hold that the District Court properly granted judgment as a matter of law in favor of Bahl, Bielat, and Iacano on the due process and civil conspiracy claims. To succeed on his Fourteenth Amendment claim, DeLuzio had to show that CYS deprived him of property without sufficient process by denying him "notice and an opportunity to respond." *Cleveland Bd. of Ed. v. Loudermill*, 470 U.S. 532, 546, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). It is undisputed, however, that DeLuzio received written notice both of his suspension and of CYS's intent to terminate him, and had the opportunity to respond at a pre-termination hearing. (*See* JA 1073, 1090.) "The essential requirements of due process" entitle a public employee "to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Loudermill*, 470 U.S. at 546, 105 S.Ct. 1487. De-Luzio's suspension and termination process adhered to these requirements of due process, and, accordingly, we will affirm the District Court's grant of judgment as a matter of law on DeLuzio's procedural due process claim. Moreover, since the predicate unlawful act for the conspiracy claim was a purported due process violation, and there was no due process violation, we will

also affirm the judgment entered as a matter of law on the conspiracy claim.

■ Finally, we reject Bahl's three-pronged attack on the sufficiency of the evidence. We apply an exceedingly deferential standard of review to a District Court's finding that sufficient evidence supported a jury verdict. We must affirm unless, after reviewing the record "in the light most favorable to the non-moving party," it is "critically deficient of the minimum quantum of evidence from which the jury might reasonably afford relief." *Kinnel v. Mid–Atlantic Mausoleums, Inc.*, 850 F.2d 958, 961 (3d Cir.1988) (citation omitted).

■ Bahl does not meet this high burden. First, the jury could certainly have concluded that DeLuzio's protected speech was a substantial factor in Bahl's termination recommendation. DeLuzio testified that Bahl had been antagonistic towards him since 1996, and the jury also heard evidence that Bahl had twice been involved in reprimands of DeLuzio that were later overturned or expunged. The jury could have properly viewed any or all of these events as evidence of retaliatory animus. Second, there was at least a "minimum quantum of evidence" that Bahl's recommendation was a cause of DeLuzio's termination. It was well within the jury's purview to infer that since Bahl had authority to hire, suspend, and recommend firing CYS employees, and had day-to-day authority over these employees, that the County Commissioners, who had ultimate authority to fire DeLuzio, would have tak-

---

**3.** Bahl also fails in his argument that he cannot be held liable for First Amendment retaliation because, although Bahl was DeLuzio's ultimate supervisor throughout DeLuzio's tenure and could recommend that DeLuzio be fired, he did not wield final authority for termination of CYS employees. *See Kutztown*, 455 F.3d at 240 ("A supervisor who

lacks the power to terminate a subordinate's employment may nonetheless abuse his power with respect to that subordinate, and may even constructively discharge the subordinate, provided he (the supervisor) exercises *some* power over the employee.")(emphasis in original).

en seriously Bahl's recommendation. Finally, record evidence supported the jury's imposition of punitive damages, which are appropriate where "the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade,* 461 U.S. 30, 56, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983). Here, the jury could have inferred Bahl's intent, or his disregard for DeLuzio's right to engage in protected speech, from testimony regarding Bahl's ongoing hostility towards DeLuzio, the improper negative evaluations, and Bahl's hand in "muddying the waters" for DeLuzio when he sought work after leaving CYS.

## IV.

For the foregoing reasons, we will affirm the District Court's decisions in all respects.

