

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-17-2008

# Fortune v. Bitner

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-3385

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Fortune v. Bitner" (2008). *2008 Decisions.* Paper 830.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/830

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 07-3385
_____

KENNETH FORTUNE,

Appellant

v.

ROBERT S. BITNER, individually and in his official capacity as chief hearing examiner;
J. HARVEY BELL, individually and in his official capacity as case specialist of Bureau
of Inmates Services of the Department of Corrections; ROBERT LALLI; SNYDER; C.O.
STEVENS; C.O. PARKS; NURSE WILLIAM WILLIAMS; R.N. PATTY EVERHART;
WALLACE F. COUCH; LT. ASHLEY SMITH; DAVID MELLOTT; C.O.
CALDERWOOD; C.O. BOONE; C.O. FOGLE; C.O. WEYANDT; C.O. GIBSON; C.O.
WHITESEL; C.O. DUGAN

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civ. No. 01-cv-00111)
District Judge: Honorable Thomas I. Vanaskie

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
July 11, 2008
Before: SLOVITER, BARRY and NYGAARD, Circuit Judges

(Opinion filed: July 17, 2008)
_____

OPINION
_____

PER CURIAM

Kenneth Fortune appeals, pro se, from the judgment entered in favor of Appellees

by the United States District Court for the Middle District of Pennsylvania. We will

affirm the decision of the District Court.

I.

This case arose out of Fortune's incarceration at SCI-Huntingdon ("Huntingdon")

from December 1996 until May 2001. While at Huntingdon, he was generally housed in

the prison's Restricted Housing Unit ("RHU"), either in Disciplinary or Administrative

Custody. Fortune advanced numerous claims against multiple employees of the

Pennsylvania Department of Corrections ("DOC"), including J. Harvey Bell, a DOC

pardons case specialist, and Robert S. Bitner, DOC's Chief Hearing Examiner. Among

his many allegations, Fortune claimed that he repeatedly tried without success to obtain a

transfer from Huntingdon on the grounds that Huntingdon staff members continued to

mistreat and threaten him and that he had been separated from the staff members in the

past. Furthermore, Huntingdon staff members allegedly defamed Fortune by

characterizing him as mentally ill. The characterization was allegedly part of an

extensive plot to murder him and then make it look like a suicide. For a relatively brief

period of time, Fortune was incarcerated in SCI-Waymart's Special Assessment Unit,

evidently for a mental health assessment. According to Fortune, he was also a victim of

retaliation on account of his history of litigation.[1] Finally, Huntingdon guards allegedly

---

[1] Fortune is a frequent pro se litigant. In particular, he previously filed a federal action alleging, among other things, the use of excessive force during a cell extraction. The district judge dismissed all claims except the one alleging excessive force, and the jury ultimately rendered a verdict against Fortune. We affirmed on appeal. See Fortune

2

used excessive force against him on December 28, 1999, as well as on July 24, 2000.

The case itself was extensively litigated before the District Court, which disposed of Fortune's various claims in several thorough decisions. Following the filing of an amended complaint, the District Court granted in part and denied in part Appellees' motion to dismiss for failure to state a claim. It subsequently denied Fortune's motion for reconsideration. After discovery was conducted, the District Court granted Appellees' motion for summary judgment as to Fortune's remaining claims and entered judgment in favor of all Appellees. As before, Fortune moved to reconsider, but the District Court denied his motion. Fortune accordingly filed a timely notice of appeal.

## II.

We have appellate jurisdiction pursuant to 28 U.S.C. § 1291 and exercise plenary review over a district court's orders granting a motion to dismiss and for summary judgment. See, e.g., Phillips v. County of Allegheny, 515 F.3d 224, 230 (3d Cir. 2008); Debiec v. Cabot Corp., 352 F.3d 117, 128 n.3 (3d Cir. 2003). In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court is required to "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips, 515 F.3d at 233 (citation omitted). With respect to summary judgment, we must determine if there is any genuine issue of material

---

v. Horn, 80 F. App'x 285 (3d Cir. 2003) (unpublished table decision).

3

fact and whether the moving party is entitled to judgment as a matter of law. See, e.g., Fed. R. Civ. P. 56(c); Debiec, 352 F.3d at 128 n.3. We also may affirm on any ground supported by the record. See, e.g., Tourscher v. McCullough, 184 F.3d 236, 240 (3d Cir. 1999). After reviewing the arguments raised by Fortune in his appellate brief, the record on appeal, and the District Court's own thorough decisions, we conclude that the District Court committed no reversible error in disposing of Fortune's claims.

Fortune initially contends that the District Court erred by prematurely dismissing his retaliation claims against Bell and Bitner. According to Fortune, he adequately alleged that Appellees were aware of his unresolved separation from Huntingdon staff members but participated in a conspiracy to deny his transfer requests, cover up the previous separation, and even kill him "because he is [an] intelligent, articulate, well spoken prisoner known to [Appellees] to file grievances and lawsuits to vindicate his rights." (Appellant's Br. at 8.) Nevertheless, the District Court properly determined that he failed to state a cognizable claim, observing that his allegations of retaliation were conclusory in nature. See, e.g., Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005) ("However, a court need not credit either 'bald assertions' or 'legal conclusions' in a complaint when deciding a motion to dismiss." (citation omitted)). For instance, Fortune speculated "that the only possible reason Bitner would deny his appeal would be to retaliate against him." (10/28/03 Memorandum at 3-4.) Furthermore, his appellate challenge to the District Court's retaliation ruling appears premised on the alleged existence of an evidently wide-ranging conspiracy against him. However, the District

4

Court correctly determined that his conspiracy claims must be dismissed because of his failure to state, in a non-conclusory fashion, "facts from which any type of conspiratorial agreement between the [Appellees] can be inferred." See, e.g., D.R. v. Middle Bucks Area Vocational Technical Sch., 972 F.2d 1364, 1377 (3d Cir. 1992).

Fortune further challenges the District Court's dismissal of his mental health claims. However, we must deny this challenge as well. The District Court correctly determined that he failed to state a legally cognizable claim of defamation under the federal Constitution. See, e.g., Hill v. Borough of Kutztown, 455 F.3d 225, 236 (3d Cir. 2006). In the course of the District Court's proceedings, it was further revealed that the DOC did briefly transfer Fortune to a "Special Assessment Unit" in another Pennsylvania prison. Fortune accordingly asserts that he was denied his due process rights, pursuant to the Supreme Court's ruling in Vitek v. Jones, 445 U.S. 480 (1980), to an adversarial hearing at which he could confront the mental illness accusations against him. Nevertheless, his brief transfer was evidently for the sole purpose of a mental health assessment. As the District Court expressly noted, he was apparently never subjected to either involuntary medication or any other compulsory treatment for mental illness. In turn, Fortune testified in his deposition that he never even spoke with any doctors while he was in the Special Assessment Unit. After approximately two weeks, Fortune was promptly returned to Huntingdon, and his name itself was then removed from the mental health roster. Such temporary measures, evidently taken for evaluation purposes, do not appear to give rise to any cause of action under Vitek. See, e.g., Gay v. Turner, 994 F.2d

5

425, 427 (8th Cir. 1993) (per curiam) ("The temporary transfers in the present case were unlike the indefinite commitment in <u>Vitek</u> and did not constitute a major change in the conditions of confinement amounting to a grievous loss to [the inmate], which would require the <u>Vitek</u> procedural protections." (citations omitted)).

Following discovery, the District Court granted summary judgment as to Fortune's Eighth Amendment failure-to-protect claims against Bell and Bitner on the ground that Fortune failed to exhaust his available administrative remedies as required by 42 U.S.C. § 1997e(a). While Fortune takes issue with this exhaustion ruling at some length, Appellees persuasively argue that the claims themselves lack merit. Fortune characterizes both Bell and Bitner as "executive supervisory officials within the [DOC]." (Appellant's Br. at 12.) On the contrary, Bell, as a pardons case specialist, lacked authority over inmate separations or transfer matters. Likewise, Bitner served as the DOC's Chief Hearing Examiner, and his role was generally limited to providing an additional level of administrative review pursuant to the DOC's own policies. In the end, Fortune did not raise a genuine issue of material fact with respect to whether the two officials personally violated his Eighth Amendment rights. He simply failed to "present enough evidence to support the inference that the defendants 'knowingly and unreasonably disregarded an objectively intolerable risk of harm.'" <u>Beers-Capitol v. Whetzel</u>, 256 F.3d 120, 132 (3d Cir. 2001). Likewise, it cannot be said that Bell and Bitner were legally accountable for the conduct of Huntingdon staff members under any theory of supervisory liability. <u>See, e.g.</u>, <u>id.</u> at 133-34; <u>Baker v. Monroe Twp.</u>, 50 F.3d 1186, 1190-91 (3d Cir. 1995).

6

Next, Fortune argues that the District Court erred in granting summary judgment as to his excessive force claims arising out of the December 28, 1999 and July 24, 2000 incidents. Fortune does not dispute that he failed to file an excessive force grievance pursuant to the DOC's inmate grievance procedures specified in DC-ADM 804. Instead, he claims that DOC policy prevented him from pursuing an excessive force grievance pursuant to the inmate grievance procedures because he was already subject to misconduct proceedings regarding the two incidents under the separate disciplinary procedures in DC-ADM 801. However, as the District Court noted, "Fortune's professed confusion about his inability to file a grievance related to an event which resulted in his receipt of a misconduct seems self-serving in light of the fact that Fortune filed two (2) grievances [pursuant to DC-ADM 804] related to the 1999 use of force event." (Supp. App. at 122.) The District Court also observed that Fortune's administrative appeals from his misconduct for the December 28, 1999 incident, filed pursuant to DC-ADM 801, were based solely on the alleged disproportionality of his punishment and omitted any allegation involving excessive force. With respect to the July 24, 2004 incident, Bitner twice rejected Fortune's attempt to obtain final administrative review of his misconduct because he failed to complete his appeal to the Huntingdon's superintendent as required by the applicable policy. See, e.g., Williams v. Beard, 482 F.3d 637, 639 (3d Cir. 2007) (noting that prisoner must comply with administrative requirements and that "prison grievance procedures supply the yardstick for determining what steps are required for exhaustion." (quotation omitted)). While Fortune did submit letters to the Program

7

Review Committee ("PRC") and Huntingdon's superintendent regarding the misconduct for the July 24, 2004 incident, his PRC correspondence lacked any reference whatsoever to the issue of excessive force. Accordingly, the District Court properly granted summary judgment as to Fortune's claims of excessive force for failure to exhaust administrative remedies.

Finally, Fortune contends that the District Court committed reversible error by sua sponte granting summary judgment in Appellees' favor as to the other claims arising out of the December 28, 1999 incident, including his claim that he was subjected to an unreasonable strip search. Following the District Court's original summary judgment ruling, Fortune sought reconsideration because the District Court "sua sponte, without notice to him, granted Defendants summary judgment on claims not encompassed within their motion." (Supp. App. at 123.) The District Court expressly rejected Fortune's argument because such claims arose out of the December 28, 1999 incident and, as with the excessive force claim, Fortune failed to exhaust administrative remedies. Fortune now argues that he could not file the requisite grievances because he was restricted to filing no more than two grievances per month. Nevertheless, the District Court appropriately considered and rejected this restriction argument in connection with the subsequent incident on July 24, 2000. Fortune himself did not attempt to submit an otherwise untimely grievance and request that it be considered on the merits in light of his grievance restriction. He also did not try to raise the strip search and other issues in the course of his misconduct proceedings under DC-ADM 801. Under the circumstances,

8

the District Court correctly denied his remaining claims arising out of the December 28, 1999 incident as unexhausted.

III.

For the foregoing reasons, we will affirm the judgment of the District Court.