

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-4-2009

# William Stesney v. Northumberland Cty B

Precedential or Non-Precedential: Non-Precedential

Docket No. 08-4143

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

## Recommended Citation

"William Stesney v. Northumberland Cty B" (2009). *2009 Decisions.* Paper 1231.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1231

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 08-4143

WILLIAM V. STESNEY,

Appellant

v.

NORTHUMBERLAND COUNTY BOARD OF COMMISSIONERS

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civ. No. 07-00183)
Honorable John E. Jones, III, District Judge

Submitted under Third Circuit LAR 34.1(a)
June 2, 2009

BEFORE: MCKEE, HARDIMAN, and GREENBERG, Circuit Judges

(Filed: June 4, 2009)

OPINION OF THE COURT

GREENBERG, Circuit Judge.

This matter comes on before this Court on an appeal from an order for summary

judgment entered on September 19, 2008, in the District Court in favor of defendant-

appellee Northumberland County Board of Commissioners ("Board") against plaintiff-

appellant William Stesney in this action that Stesney brought against the Board under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 et seq.[1]  The District Court had jurisdiction under 28 U.S.C. § 1331 and we have jurisdiction under 28 U.S.C. § 1291.  On this appeal we exercise plenary review and therefore we can affirm only if there is no dispute of material fact and the Board is entitled to judgment as a matter of law.  See Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co., 998 F.2d 1224, 1230 (3d Cir. 1993).

The District Court set forth its findings of fact and conclusions of law in a memorandum opinion dated September 19, 2008, and thus we will not repeat what that Court said.  There is no question at all but that the Court reached the correct result and, inasmuch as we approve of its holding and opinion, including its burden shifting analysis, we will affirm its order for summary judgment substantially for the reasons it set forth.

---

[1]Stesney also sued the Board under the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Cons. Stat. §§ 951 et seq. (West 1991), invoking the District Court's supplemental jurisdiction under 28 U.S.C. § 1367(a) on the basis of the same allegedly discriminatory conduct that his complaint sets forth for his action under the ADEA.  The District Court and the parties did not deal separately with the PHRA claim even though the order of September 19, 2008, in terms, granted the Board summary judgment on the entire case. That omission, however, ordinarily would be of no consequence, as the ADEA and the PHRA use the same standards in a case of this type, and thus the outcome of the action would be the same under both statutes.  See Hill v. Borough of Kutztown, 455 F.3d 225, 247 (3d Cir. 2006).  Here, however, the omission is consequential because the District Court intended that the PHRA claim remain open, though not in the District Court, after the entry of the September 19, 2008 order for summary judgment because the Court declined to exercise jurisdiction over it.  Thus, though the September 19, 2008 order does not say as much we regard it as having dismissed the PHRA claim without prejudice.

We, however, do make the following points. Stesney began serving as Chief Clerk of the Board on January 1, 1996, and held consecutive one-year or four-year appointments until his discharge on August 18, 2003.[2] Though the title of the Chief Clerk suggests that the position is ministerial in nature, the Chief Clerk serves as an administrator for the Board participating in formulation and administration of the County budget among other activities. Indeed, Stesney indicates in his complaint that he had the position of County Budget Director. Moreover, even though the Board appoints the Chief Clerk to a specific term of office, it may remove him at any time. The Board has three commissioners, two from one political party and one from another, naturally called the majority and minority commissioners. It would be expected that in Pennsylvania the dominant parties would be the Democratic and Republican parties and thus the majority and minority commissioners on the Board would be from those two parties, depending upon election outcomes, and such is the case in Northumberland County. The majority party controls the appointment of the Chief Clerk and the position is political in nature.

During the summer of 2003, Northumberland County faced a financial crisis. In July 2003 it became known to the public that the county was $4,000,000 in debt, a sizeable sum for a small county. Subsequently, however, the situation was revealed to be

---

[2]Stesney asserts that he was serving a four-year term that started in early 2000 when the Board terminated him. On the other hand, the term is stated to have been one-year in other places in the record. As it happens, however, the length of the term has no bearing on our outcome on this appeal.

worse as there was shown to be a much larger deficit, i.e., $9,400,000. Then, on August 9, 2003, a local newspaper reported that Stesney publicly admitted having helped create the county's budget crisis. In particular, the newspaper quoted Stesney as stating that under earlier serving commissioners he could have said that "it was a bogus budget, but I did my job. I was hired to administer it." App. at 134. Though Stesney in his deposition denied making the quotation attributed to him, there is no doubt but that the county was in a dire financial condition during the summer of 2003 and that Stesney was involved in the circumstances leading to the crisis. About ten days after publication of the quotation that the newspaper attributed to Stesney, the Board replaced him as Chief Clerk with the assistant Chief Clerk, the stated reason being budgetary.

In the fall, the electorate replaced the Board's Democratic majority with a Republican majority. The new Republican majority, after previous interim appointments of a Chief Clerk before it took office, including the initial designation of the assistant Chief Clerk as Chief Clerk, appointed Michael Lindermuth to that position.[3] At that time, Stesney was 64 years old and Lindermuth was 37 years old.

We are at a loss to understand how, when Stesney brought this action, he could have expected to make a recovery under the ADEA on the basis of age discrimination. As Chief Clerk, he occupied a political position in the epicenter of a political and

---

[3]The record is not absolutely clear on this point, but it appears that the outgoing Democratic majority in December appointed Lindermuth as Chief Clerk as a courtesy to the incoming Republicans who intended to appoint Lindermuth to the position.

financial crisis. Though we cannot be certain as to how much money the Board saved by terminating his employment, surely there was some savings when it did so as there is no suggestion in the record that the assistant Chief Clerk who directly replaced him received two salaries simultaneously, one as Chief Clerk and another as assistant to himself. Moreover, the Board terminated the employment of other county employees as well in money saving measures.

In any event, it is more significant that even if the county would not have saved any money by terminating Stesney's employment, he should have expected the termination as a consequence of the political and financial crisis confronting Northumberland County for which, fairly or not, he was identified as having been at least partially responsible. Finally, he had to be aware that regardless of the county's financial condition, when the new Republican majority replaced the Democratic majority on the Board less than five months after the Board terminated him, it was quite to be expected that for political reasons unrelated to his age or even his stewardship of his office, he would be terminated or not reappointed.

The order for summary judgment entered September 19, 2008, will be affirmed.