NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-1573
_____

SCOTT E. KOCHER,
                              Appellant
v.

LARKSVILLE BOROUGH; MAYOR JOE ZAWADSKI;
TONY KOPKO, Police Chief; JOHN PEKAROVSKY, Individually


On Appeal from the United States District Court
for the Middle District of Pennsylvania
District Court No. 3-11-cv-02053
District Judge: The Honorable A. Richard Caputo

Argued November 20, 2013
Before:  AMBRO, SMITH, *Circuit Judges*
and O'CONNOR,* *Associate Justice (Ret.)*

(Filed: December 10, 2013)

Cynthia L. Pollick, Esq. (ARGUED)
The Employment Law Firm
363 Laurel Street
Pittston, PA 18640-0000
              *Counsel for Appellant*

_____

* Sandra Day O'Connor, Associate Justice (Ret.) of the Supreme Court of the United States, sitting by designation.

Eric M. Brown, Esq. (ARGUED)
Siana, Bellwoar & McAndrew
941 Pottstown Pike
Suite 200
Chester Springs, PA 19425
            *Counsel for Appellee*

_____

OPINION
_____

SMITH, *Circuit Judge.*

Appellant Scott E. Kocher brought this action under 42 U.S.C. § 1983 against Larksville Borough, Joseph Zawadski, Tony Kopko, and John Pekarovsky alleging that the defendants violated his First and Fourteenth Amendment rights in connection with his termination from the Larksville Borough Police Department. The District Court granted summary judgment in favor of the defendants and Kocher appealed. For the reasons that follow, we will affirm.

I.

As this appeal comes to us following summary judgment, we review the facts in the light most favorable to the nonmoving party. *See Gwynn v. City of Phila.*, 719 F.3d 295, 297 (3d Cir. 2013).

Kocher brought this action after being terminated from his position as a part-time patrol officer for Larksville Borough (the "Borough"). Kocher was terminated

in September 2010 following a confrontation with the Borough's mayor, Joseph Zawadski ("Mayor Zawadski").

On August 13, 2010, Mayor Zawadski learned that attendees of a local church bazaar were illegally parked on Borough sidewalks. Mayor Zawadski called Kocher and directed him to handle the issue, but Kocher responded that he was addressing another matter. It was nearly two hours after Mayor Zawadski's call before Kocher finally arrived at the bazaar. As soon as Kocher arrived, Mayor Zawadski confronted him about his delayed response. Kocher alleges that Mayor Zawadski—with a finger poked at Kocher's chest—declared that he was the boss, instructed Kocher to follow his orders, and threatened to bring charges against Kocher.

Before leaving the bazaar, Kocher discussed the confrontation with Police Chief Tony Kopko ("Chief Kopko"). Chief Kopko opined that Kocher should have arrested Mayor Zawadski, and he advised Kocher to complete an incident report documenting the exchange. Kocher also contacted Detective John Edwards ("Detective Edwards"), who similarly suggested that Mayor Zawadski should have been arrested and that Kocher should file an incident report to cover himself.

The following day, Kocher received a phone call from Borough Councilman John Pekarovsky ("Councilman Pekarovsky"). Councilman Pekarovsky had a different perspective on the confrontation, and he instructed Kocher that Mayor

Zawadski was his boss and that Kocher must obey the Mayor's orders.

On the advice of Chief Kopko and Detective Edwards, Kocher completed a written incident report to document both his encounter with Mayor Zawadski and the call from Councilman Pekarovsky (the "Incident Report"). Kocher drafted the Incident Report with a password-protected program available only on computers inside the police station. The Incident Report followed departmental standards, providing the time, date, area, and location of the incident, as well as a narrative description of what occurred. After the report was completed, Kocher entered his badge number at the bottom, printed a copy for himself, and placed a second copy in the appropriate basket with the other reports.

Chief Kopko's initial review of the Incident Report led him to believe that Kocher had acted properly at the bazaar. However, Chief Kopko became less convinced of that after he discovered that several 911 time records were missing for the evening of August 13. Chief Kopko assigned Detective Edwards to gather information about the missing calls. After reviewing the call logs obtained by Detective Edwards, Chief Kopko concluded that the times listed on Kocher's Incident Report were inaccurate. More specifically, Chief Kopko determined that Kocher had misrepresented his status when Mayor Zawadski called, and that he was actually inactive for about an hour before reporting to the bazaar. Chief Kopko further concluded that Kocher had erased the 911 records in an attempt to falsify

his time.

On September 21, 2010, Chief Kopko prepared an internal memorandum (the "Kopko Memorandum") for the Larksville Borough Council recommending that Kocher be terminated from his position as patrol officer. With respect to the confrontation at the bazaar, the Kopko Memorandum stated:

> I have recently discovered that in the problem at [the bazaar] between Mayor Zawadski and [patrolman] Scott Kocher that Kocher lied about his times on his reports. He did in fact have at least one (1) hour to address the Mayor's concerns and orders. He did not. What he did do was lie and falsify his reports. I found out that the 911 Center times were erased from our computer. I was able to recover the times, proving he was lying.

Based in part on the Kopko Memorandum, the Borough Council terminated Kocher at its September 21, 2010 public meeting. Although the Council reviewed the Kopko Memorandum during its executive session, neither the reasons for the termination nor the contents of the memo were discussed on the record.

In April 2009 (prior to the incident at the bazaar), Kocher had applied for a position as a full-time officer for Kingston Borough. In connection with the application, Kocher signed a Waiver and Release for Background Investigation (the "Release"), authorizing Kingston Borough "to make a thorough investigation into [his] background, previous employment, education, and references in order to ascertain [his] suitability for service as a police officer." The Release also purported to release "from all liability and claims any and all persons, companies

5

and corporations (public and private) supplying any information whatsoever to representatives of the Municipality of Kingston."

Detective Richard Kotchik ("Detective Kotchik") was assigned to conduct Kocher's background check, which he initially completed on September 4, 2010 (after the confrontation at the bazaar but before Kocher's termination). As part of his investigation, Detective Kotchik spoke with Chief Kopko. Although Chief Kopko opined that Kocher had a tendency to be a lazy worker, he did not mention that Kocher was under investigation or that he might be terminated. After completing his investigation, Detective Kotchik reported to the Kingston Borough's Civil Service Commission that Kocher "could be a good Police Officer" but was "not . . . the best applicant for the position."

Shortly after submitting his initial report, Detective Kotchik learned that Kocher had been terminated by Larksville Borough, and he thus followed up with Larksville Borough to request that he be allowed to inspect Kocher's personnel file. The Borough Secretary initially denied Kotchik's request to view the file, but later permitted an inspection after Kotchik showed her the Release signed by Kocher. After reviewing the personnel file, which contained the Kopko Memorandum, Detective Kotchik supplemented his earlier report to provide the information pertaining to Kocher's termination.

By letter dated November 30, 2010, Kingston Borough's Civil Service

Commission informed Kocher that he was not suitable for employment with the Kingston police department. The letter expressly noted that Kocher failed his background investigation because of the circumstances surrounding his termination by Larksville Borough.

Based on the foregoing events, Kocher filed the instant action against Larksville Borough, Mayor Zawadski, Chief Kopko, and Councilman Pekarovsky. Kocher's amended complaint sets out three causes of action: (1) a First Amendment retaliation claim; (2) a Fourteenth Amendment claim for deprivation of a liberty interest in reputation; and (3) state law claims for defamation and false light. The District Court granted summary judgment in favor of the defendants on Kocher's federal claims and declined supplemental jurisdiction over Kocher's state law claims. Kocher timely appealed.

## II.

The District Court had jurisdiction under 28 U.S.C. §§ 1331, 1343, and 1367. We have jurisdiction under 28 U.S.C. § 1291.

"We exercise plenary review over the District Court's grant of summary judgment and apply the same standard that the District Court would apply." *Burton v. Teleflex Inc.,* 707 F.3d 417, 424–25 (3d Cir. 2013) (citing *Howley v. Mellon Fin. Corp.*, 625 F.3d 788, 792 (3d Cir. 2010)). "A grant of summary judgment is appropriate where the moving party has established 'that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* at 425 (quoting Fed. R. Civ. P. 56(a)).

III.

We begin with Kocher's First Amendment retaliation claim. Kocher contends he was retaliated against for engaging in speech protected by the First Amendment. Specifically, Kocher claims he was terminated for complaining to Chief Kopko about Mayor Zawadski's conduct at the bazaar and for memorializing those complaints in a formal incident report. The District Court rejected this claim, finding that because Kocher "did not speak as a citizen on a matter of public concern," his speech was not protected by the First Amendment.

To state a claim for retaliation under the First Amendment, a public employee plaintiff must allege that he engaged in protected speech. Public employee speech is "protected" when the employee: (1) speaks "as a citizen," (2) "on a matter of public concern," and (3) the government employer does not have "an adequate justification" for its negative employment action. *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006); *see also Gorum v. Sessoms*, 561 F.3d 179, 185 (3d Cir. 2009) (citing *Hill v. Borough of Kutztown*, 455 F.3d 225, 241–42 (3d Cir. 2006)). Under *Garcetti*, the threshold question is whether the employee spoke in his capacity as a private citizen or, rather, in his capacity as an employee. As the Supreme Court explained, "when public employees make statements pursuant to

their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti*, 547 U.S. at 421; *see also id.* at 421–22 ("Restricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen.").

Thus, we must first determine whether Kocher's speech was made pursuant to his official duties. Determining what falls within the scope of an employee's official duties is a "practical" exercise that focuses on "the duties an employee is actually expected to perform." *Garcetti*, 547 U.S. at 424–25. Although formal job descriptions may be helpful, the inquiry is not confined to such descriptions because they "often bear little resemblance" to an employee's actual workplace responsibilities. *Id.* at 424. Only if Kocher was speaking in his capacity as a private citizen, and not as an employee, will we inquire into the content of the speech to ascertain whether it touched upon a matter of public concern.

Applying the practical inquiry envisioned by *Garcetti*, we have no difficulty concluding that Kocher's speech was made pursuant to his official duties, and, therefore, is not entitled to First Amendment protection. Kocher drafted the Incident Report while he was on duty and at the suggestion of his supervisors. The report was typed on the police department's official incident report form, which

9

identified Kocher's badge number, and it was completed using a password-protected program available only on police department computers. After finalizing the report, Kocher placed it in a filing bin in the same manner as he did with all other incident reports. These formalities lead us to conclude that Kocher's speech was made pursuant to his official duties and not in his capacity as a private citizen.

Moreover, it is apparent that the task of completing incident reports falls squarely within a Larksville Borough patrol officer's professional responsibilities. The Larksville Police Department Policies and Operating Procedures expressly provide, *inter alia*, that patrol officers have a duty to "prepare[] neat thorough and concise reports of all police activity." Kocher acknowledged as much in his deposition, noting that patrol officers have a duty to complete incident reports even when no arrests are made. Consistent with department policy, Kocher's Incident Report provided a narrative description of the "police activities" that transpired while he was on duty the evening of the bazaar. It is difficult to conceive of this as anything other than employee speech.

Kocher responds that Larksville "police officers do not have an official duty to report being the victim of a public assault or official misconduct." Kocher views his duties too narrowly. As the Supreme Court explained, "the listing of a given task in an employee's written job description is neither *necessary* nor sufficient to demonstrate that conducting the task is within the scope of the employee's

10

professional duties for First Amendment purposes." *Garcetti*, 547 U.S. at 425 (emphasis added). Our review looks more broadly to determine which "duties an employee actually is expected to perform." *Id.* at 424–25. Here, completing incident reports is one of the duties Larksville Borough patrol officers are expected to perform. That a particular report contains material not mandated by department policy does not negate the fact that completing incident reports is an official employee function.

This principle applies with equal force to Kocher's argument that he filed the Incident Report only because he feared losing his job. As we explained, Kocher's professional duties as a patrol officer included completing incident reports to document his police activity. Regardless of the motivating factor, that is precisely what Kocher did here.[1]

For the reasons stated, we agree with the District Court that Kocher spoke pursuant to his official duties as a patrol officer. Accordingly, Kocher's speech is

---

[1] Although he fails to clearly articulate it, Kocher seems to argue that he was retaliated against for the *oral* report he gave to Chief Kopko before leaving the bazaar. Although that speech was not as formally expressed as was the Incident Report, we conclude that it, too, is employee speech and not citizen speech. It is to be expected that employees will report to, and seek advice from, their supervisors when job-related problems arise. Kocher's oral report to Chief Kopko related solely to his status as an employee and has "no relevant analogue to speech by citizens who are not government employees." *Garcetti*, 547 U.S. at 424 (distinguishing non-employment-related speech such as "writing a letter to a local newspaper" and "discussing politics with a co-worker"). Accordingly, we likewise conclude that Kocher's oral report to Chief Kopko is not protected under the First Amendment.

not entitled to First Amendment protection.[2]

## IV.

Kocher also claims that Larksville Borough and the individual defendants deprived him of a liberty interest in his reputation by making materially false and stigmatizing public statements about him, thereby preventing him from obtaining full-time employment. The District Court rejected Kocher's claim, finding that none of the individual defendants were responsible for publishing the allegedly stigmatizing statements and that any dissemination by Larksville Borough was not made by a policymaker or pursuant to official policy or custom, which would be necessary for liability to attach under 42 U.S.C. § 1983.

The Supreme Court has long recognized that an individual has a protectable interest in his reputation. *See Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971). To make out a claim for deprivation of a liberty interest in reputation, "a plaintiff must show a stigma to his reputation plus deprivation of some additional right or interest." *Hill*, 455 F.3d at 236 (emphasis removed) (citing *Paul v. Davis*, 424 U.S. 693, 701 (1976)). Under the "stigma-plus" test, "[t]he creation and dissemination of a false and defamatory impression is the 'stigma,' and the termination is the 'plus.' When such a deprivation occurs, the employee is entitled

---

[2]    Because we conclude Kocher did not speak as a citizen, we will not address whether Kocher's speech touched upon a matter of public concern.

to a name-clearing hearing." *Id.*

In order to satisfy the "stigma" prong, a plaintiff must show (1) that the stigmatizing statement was made publicly, and (2) that the statement was substantially and materially false. *Hill*, 455 F.3d at 236. Defendants contend that Kocher cannot meet the first of these requirements, *i.e.*, he cannot show any defendant was responsible for publicly disseminating the allegedly stigmatizing information. Kocher responds that the defendants, in particular Larksville Borough and Chief Kopko, publicly disseminated the stigmatizing charges by placing the Kopko Memorandum into Kocher's personnel file and allowing it to be viewed by a prospective employer.[3]

We begin by evaluating Kocher's claims against the individual defendants. "[A] defendant in a civil rights action must have personal involvement in the alleged wrongs to be liable." *Sutton v. Rasheed*, 323 F.3d 236, 249 (3d Cir. 2003) (citation omitted).

First, with respect to Mayor Zawadski and Councilman Pekarovsky, Kocher has failed to cite any evidence in the record to support his contention that either of

---

[3] Kocher additionally argued before the District Court that the stigmatizing comments were made public when the Kopko Memorandum was provided to the Larksville Borough Council and when it was transmitted to the Unemployment Compensation Bureau in response to Kocher's application for employment benefits. Because these arguments are not set forth in Kocher's appellate briefs, they are waived. *See Kost v. Kozakiewicz,* 1 F.3d 176, 182 (3d Cir.1993) ("It is well settled that if an appellant fails to [set forth an issue and arguments in support thereof in his opening brief], the appellant normally has abandoned and waived that issue on appeal and it need not be addressed by the court of appeals.").

these two men publicly disseminated any stigmatizing comments. There is simply no evidence to show the direct or indirect involvement of either of them in the drafting of the Kopko Memorandum. Nor does the evidence implicate either Zawadski or Pekarovsky in placing the Kopko Memorandum in Kocher's personnel file or in disclosing the file to Detective Kotchik. Without evidence that Mayor Zawadski or Councilman Pekarovsky personally published the reasons for Kocher's termination, summary judgment was proper as to both.

Kocher has likewise failed to produce evidence that the allegedly stigmatizing information was made public by Chief Kopko. Although it is undisputed that Chief Kopko authored the Kopko Memorandum, for purposes of a "stigma-plus" claim, drafting a document does not automatically render someone liable for its subsequent publication. Chief Kopko was not the custodian of Kocher's personnel file. And there is no evidence before us that he personally placed the Kopko Memorandum in the file or that he played a part in making the file available for inspection. To the contrary, the evidence presented shows that the contents of Kocher's personnel file were made available by the Borough's Secretary, an individual not named as a defendant in this action.

At all events, Kocher's claim would be unavailing even if he could show that Chief Kopko actually placed the Kopko Memorandum in his personnel file. As this Court's previous cases demonstrate, simply depositing material into an

14

employee's personnel file does not meet the stigma prong's "made publicly" requirement. *See, e.g.*, *Cooley v. Pa. Hous. Fin. Agency*, 830 F.2d 469, 473–75 (3d Cir. 1987), *abrogated on other grounds by Foster v. Chesapeake Ins. Co.*, 933 F.2d 1207 (3d Cir. 1991); *Copeland v. Phila. Police Dep't*, 840 F.2d 1139, 1148 (3d Cir. 1988). Rather, under *Cooley* and *Copeland*, it is the dissemination of the contents of an employee's personnel file that must be shown for a claim to be successful. *See Cooley*, 830 F.2d at 474; *Copeland*, 840 F.2d at 1148. As already noted, the evidence is clear that Chief Kopko was not present when Detective Kotchik reviewed the contents of Kocher's file, and there is nothing in the record to suggest he directed others to disseminate the allegedly stigmatizing document. Because Kocher has not identified any culpable action by Chief Kopko, summary judgment was appropriate.[4]

Finally, we consider Kocher's claim against Larksville Borough. The analysis for a municipal liability claim differs from the analysis for individual liability. We therefore review Kocher's municipal liability claims independently of the § 1983 claims against the individual defendants. *Kneipp v. Tedder*, 95 F.3d

---

[4]  Although he fails to express it clearly, Kocher appears to also argue that Chief Kopko made the information public during an interview with Detective Kotchik which took place after Kotchik reviewed the personnel file. But while Detective Kotchik acknowledged that he spoke to Chief Kopko after reviewing Kocher's personnel file, the record is silent as to the content of that conversation. Without more, knowledge that a conversation took place is insufficient to create a genuine issue of material fact as to whether Chief Kopko disseminated materially false and stigmatizing information.

1199, 1213 (3d Cir. 1996).

A municipality may not be held liable under § 1983 for an injury inflicted solely by its employees or agents. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* A policy is a decision of a municipality's "duly constituted legislative body" or of "officials whose acts may fairly be said to be those of the municipality." *Bd. of the Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403–04 (1997). A custom is a practice that, although "not . . . formally approved by an appropriate decisionmaker . . . is so widespread as to have the force of law." *Id.* at 404.

Even assuming Larksville Borough was responsible for disseminating the contents of the personnel file, Kocher cannot establish municipal liability because there is no evidence that the decision to allow Detective Kotchik to inspect the file was made pursuant to a policy, custom, or practice of the Borough. The only policy Kocher has identified is a statement which provides that "[e]very [disciplinary] action . . . shall . . . be entered into [an] officer's personal file." This policy, however, relates only to placement of information in a personnel file; it says nothing about the Borough's policy regarding granting access to those files by

16

outsiders. Likewise, despite the opportunity to conduct discovery, Kocher has not presented evidence showing a widespread custom or practice by the Borough of freely allowing prospective employers access to the Borough's employee files. To the contrary, the fact that the Secretary initially denied Detective Kotchik access to Kocher's file, and then only allowed inspection after Kotchik showed her the Release signed by Kocher, suggests this was an atypical event.[5]

The evidence presented in this case suggests that the decision to disseminate Kocher's personnel file was an isolated, discretionary decision made by the Borough's Secretary. The Secretary—who was not named as a party to this lawsuit—is not a Borough policymaker. Nor does Kocher point to evidence that her decision to allow Detective Kotchik to review the file was made at the direction of, or ratified by, an individual "whose edicts or acts may fairly be said to represent official policy." *Monell*, 436 U.S. at 694. Even if the Secretary is somehow liable for her decision (and there is no evidence before us that she is), that liability cannot pass to Larksville Borough on a theory of *respondeat superior*. *Id.*

To establish his claim, Kocher must prove the Borough was responsible for the wrongful action, either because the action was made pursuant to an official

---

[5] Kocher argues in his reply that the Release is unenforceable. However, the validity of the Release is irrelevant to our municipal liability analysis. And moreover, because Kocher did not raise this argument until his reply brief, it has been waived. *See Kost*, 1 F.3d at 182. In any event, it is hard to conceive how the Release would be unenforceable on the facts before us.

policy, custom, or practice of the Borough, or because it was undertaken or ratified by a final policymaker. Kocher has proven neither. Therefore, the District Court's decision to grant summary judgment in favor of Larksville Borough was appropriate.

## V.

For the foregoing reasons, we will affirm the judgment of the District Court.