NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-4291
_____

BRIAN BOND,
                    Appellant

v.

CITY OF BETHLEHEM
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 5-10-cv-06739)
District Judge:  Honorable Luis Felipe Restrepo
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
November 16, 2012

Before:  SCIRICA, FISHER and JORDAN, *Circuit Judges*.

(Filed: November 21, 2012)
_____

OPINION OF THE COURT
_____

FISHER, *Circuit Judge*.

        Brian Bond appeals the District Court's grant of summary judgment to the City of

Bethlehem.  For the reasons stated below, we will affirm.

I.

We write principally for the parties, who are familiar with the factual context and legal history of this case. Therefore, we will set forth only those facts necessary to our analysis.

Bond worked for the City of Bethlehem for nearly 14 years. He dated a fellow City employee, Gina Bullard. Bond and Bullard ended their relationship on August 18, 2008, which led to a torrent of churlish behavior by Bond. For example, Bond sent text messages that referred to Bullard as a "whore." In response, Bond received life-threatening phone calls from Bullard's new boyfriend. Eventually a court in Carbon County granted Bullard a protection from abuse order, which Bond ignored on at least two occasions, including once in the parking lot of City Hall. He was suspended from work while the City began its investigation of the incident.

The City's violence in the workplace policy prohibits "behaviors such as direct threats, threatening behavior, harassing by phone, email or personal interaction." Violation of this policy "may lead to disciplinary action, demotion, reassignment, suspension, dismissal, arrest or prosecution." In addition, the City's sexual harassment policy prohibits excessively offensive remarks and inappropriate use of sexually explicit or offensive language. On the basis of these policies and the City's code of ethics, the City's investigation concluded that Bond could be terminated for just cause. However, because Bond had worked for the City for 13 years without disciplinary problems, the

City offered him a "last chance" agreement. The agreement provided that Bond could avoid termination if he agreed to a 20-day suspension without pay, random drug testing, and mandatory counseling. In addition, if Bond were to be convicted of a criminal charge in connection with the incident that occurred in the City Hall parking lot, then the City would immediately terminate him. Bond's union president advised him to refuse the agreement. Bond refused and was subsequently terminated. Six months following his termination, he pled guilty to harassment and stalking. Bond sued the City of Bethlehem in the District Court alleging gender discrimination in violation of Title VII of the Civil Rights Act of 1964 and the Pennsylvania Human Relations Act, 43 Pa. Const. Stat. Ann. §§ 951-963. In addition, he alleged that he was terminated without procedural due process in violation of 42 U.S.C. § 1983. The District Court granted the City's motion for summary judgment, which Bond now appeals.

## II.

The District Court had subject matter jurisdiction over the Title VII claim and § 1983 claim pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over the Pennsylvania Human Relations claim under 28 U.S.C. § 1367. This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. Our review of an order granting summary judgment is plenary. *Callison v. City of Phila.*, 430 F.3d 117, 119 (3d Cir. 2005). Summary judgment is proper where no genuine issue of material fact exists

and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

## III.

Bond submits that the District Court erred in granting summary judgment to the City because (A) he established a prima facie case of gender discrimination, (B) the lower court based its decision upon an incomplete record, and (C) he was denied due process with respect to his termination. We address each of these assertions in turn.

## A.

First, Bond claims that he established a prima facie case of gender discrimination in violation of Title VII and the Pennsylvania Human Rights Act ("PHRA"). Because Pennsylvania courts have construed the protections of the two statutes interchangeably, the analysis is identical. *See Weston v. Pennsylvania*, 251 F.3d 420, 425 n.3 (3d Cir. 2001). Under either statute, a plaintiff must establish that (1) he is a member of a protected minority, (2) he is qualified for the position in question, (3) he has suffered an adverse employment action despite being qualified, and (4) the circumstances raise an inference of unlawful discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *see*, *e.g.*, *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 410-11 (3d Cir. 1999). Only then does the burden shift to the defendant to "articulate some legitimate, non-discriminatory reason" for its action. *McDonnell Douglas*, 411 U.S. at 802.

With respect to claims of reverse discrimination – where a plaintiff cannot demonstrate membership in a protected minority – the plaintiff must instead address the first prong by presenting sufficient evidence "to allow a fact finder to conclude that the employer is treating some people less favorably than others based upon a trait that is protected under Title VII." *Iadimarco v. Runyon*, 190 F.3d 151, 161 (3d Cir. 1999). Plaintiffs who demonstrate less favorable treatment based upon a trait that is protected under Title VII can show that the circumstances raise an inference of unlawful discrimination by "presenting sufficient evidence to allow a reasonable fact finder to conclude (given the totality of the circumstances) that the defendant treated plaintiff 'less favorably than others because of [his] . . . sex'" *Id.* at 163 (quoting *Furnco Const. Corp. v. Waters*, 438 U.S. 567, 577 (1978)).

Bond has failed to present sufficient evidence to establish a prima facie case of gender discrimination. Specifically, Bond has not demonstrated that the City refused to terminate similarly situated female employees, i.e., female employees that violated the City's violence in the workplace policy, sexual harassment policy, and code of ethics. As evidence of less favorable treatment, Bond submits that the City terminated him, but did not terminate Bullard. On its face, contends Bond, this disparity in treatment demonstrates that the City has discriminated on the basis of gender. However, Bond was subject to multiple protection from abuse orders, he admitted to sending text messages during work hours that were designed to annoy and alarm Bullard, and was charged with

5

– and ultimately pled guilty to – harassment.  As the District Court acknowledged, the record does not show that Bullard engaged in similar conduct.[1]  Bond and Bullard were therefore not similarly situated.  Bond has not demonstrated that the City refused to terminate similarly situated female employees.  As a result, Bond has not established a prima facie case of gender discrimination.

B.

Bond now notes on appeal that the District Court ordered the deposition of Bullard, which was never taken.  Critically, Bond contends, he has not been "given a reasonable opportunity to present all the material that is pertinent to the motion," contrary to Federal Rule of Civil Procedure 12(d).  As a result, according to Bond, the District Court based its decision upon an incomplete record.

However, Title VII and the PHRA place the burden upon Bond to establish a prima facie case of discrimination.  *McDonnell Douglas*, 411 U.S. at 802; *Weston*, 251 F.3d at 425 n.3.  Bond could have deposed Bullard or any other City employee within the discovery period.  He did not.  Bond incorrectly alleges that the District Court erroneously based its decision upon an incomplete record.  Actually, the District Court

---

[1] Bond notes that the record reveals that Bullard used a City fax machine and City computer during her working hours to file complaints against Bond.  He also submitted evidence to the District Court that Bullard brought a handgun into City Hall in violation of City policies.  Nonetheless, Bond admitted that he intended to annoy, alarm and frighten Bullard.  Bullard alleges that she brought a handgun for protection.  Although Bullard was not charged with a crime, Bond was charged with harassment.  We agree therefore with the District Court that Bond and Bullard did not engage in similar conduct.

based its decision upon the fact that Bond had failed to meet his burden under Title VII and the PHRA.

C.

Lastly, Bond submits that he was denied procedural due process with respect to his termination in violation of 42 U.S.C. § 1983. A plaintiff establishes a claim for deprivation of procedural due process rights by proving that "(1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of life, liberty, or property, and (2) the procedures available to him did not provide due process of law." *Hill v. Borough of Kurtztown*, 455 F.3d 225, 233-34 (3d Cir. 2006) (internal quotation omitted). The City does not contest that Bond has a property interest in his continued employment, and we therefore focus on whether Bond could avail himself of procedures consistent with § 1983.

The guiding principle of procedural due process is that any deprivation of property should be preceded by notice and opportunity to be heard. *Cleveland Bd. of Educ. v. Loudermill*, 477 U.S. 532, 542 (1985). Public employees are entitled to "notice of the charges against [them], an explanation of the employer's evidence, and an opportunity to present [their] side of the story" before their employment is terminated. *Id.* at 546. The "root requirement" of procedural due process under *Loudermill* is "that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest." 470 U.S. at 542.

7

Bond contends that his *Loudermill* hearing applied to the *suspension* of his employment and not his *termination*. Thus, according to Bond, his due process rights were violated because he was not given a second *Loudermill* hearing before his termination. He is mistaken. Bond was given notice of possible termination in a pre-deprivation hearing. His suspension and termination derive from the same events. At the hearing, Bond had an opportunity to present his side of the story and admitted that he had sent the harassing text messages. Thus Bond's termination was preceded by notice and explanation of the underlying charges against him and an opportunity to respond to those charges. A second hearing was not required. *See id.* at 546.

## IV.

For the foregoing reasons, we will affirm the order of the District Court.