[Cite as *McCollins v. Cuyahoga Cty.*, 2014-Ohio-4481.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 101319**

## GLORIA McCOLLINS

PLAINTIFF-APPELLANT

vs.

## CUYAHOGA COUNTY, ETC.

DEFENDANT-APPELLEE

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-13-812470

**BEFORE:** E.T. Gallagher, J., Keough, P.J., and McCormack, J.

**RELEASED AND JOURNALIZED:** October 9, 2014

**ATTORNEY FOR APPELLANT**

Michael A. Moses
Moses Law Offices, L.L.C.
100 E. Broad Street, Suite 1350
Columbus, Ohio 43215


**ATTORNEYS FOR APPELLEE**

Majeed G. Makhlouf
Cuyahoga County Law Director

BY:    Amy E. Marquit Renwald
Assistant Law Director
Cuyahoga County Department of Law
2079 East Ninth Street
Cleveland, Ohio 44115

EILEEN T. GALLAGHER, J.:

{¶1} Appellant, Gloria McCollins ("McCollins"), appeals the trial court's judgment upholding the final order of the Cuyahoga County Personnel Review Commission ("the Commission") terminating her employment as an investigator in the Cuyahoga County Medical Examiner's Office ("CCMEO"). We find no merit to the appeal and affirm.

{¶2} The facts, as set forth in the transcript and exhibits of the Commission hearing, are as follows: McCollins began her employment with the CCMEO in April 1999. The parties stipulated that McCollins had two disciplinary actions taken against her in 2010, prior to the events giving rise to this case. In 2011, while a pathologist was reviewing photographs taken from a death scene, she came across a photograph of a smiling conveyance crewmember. CCMEO standard operating procedures prohibit investigators from taking pictures of living people at death scenes. It is considered unprofessional and an embarrassment to the office. The records of the death investigation showed that McCollins took the photograph.

{¶3} The pathologist notified Al Clark ("Clark"), McCollins's supervisor, of the picture. She also informed Clark that McCollins improperly failed to remove a pack of money that was strapped to the decedent's waist. CCMEO standard operating procedures require investigators to collect all property from a death scene and place it in a designated location where it is documented and recorded.

**{¶4}** Clark and Joe Stopak, a morgue manager who oversees compliance with standard operating procedures, investigated these reports. McCollins told them she had difficulty with the camera and took the picture by accident. Radine Brown ("Brown"), a human resource analyst, testified that the photograph did not appear to be an accident. It was "perfectly posed," and there was nothing shaky or out of focus. (Tr. 65.) The chief photographer examined the cameras and determined there was nothing wrong with them.

**{¶5}** Two months later, McCollins was involved in another incident in which she intimidated a coworker, Cindie Carroll-Pankhurst ("Pankhurst"). McCollins argued with Pankhurst over who should respond to a particular death scene assignment. According to department policy, McCollins was next in line to respond as the on-site investigator. During the argument, McCollins blocked Pankhurst's cubicle by standing in front of the entrance to her workstation. This behavior was considered "intimidating, argumentative, and uncomfortable." According to Clark, other employees did not want to work with McCollins because of her "confrontational attitude." (Tr. 24.)

**{¶6}** As a result of these incidents, the Cuyahoga County Department of Human Resources served McCollins with a notice of pre-disciplinary conference. County employees are subject to discipline pursuant to Section 13.08 of the county's Personnel and Procedures Manual. Section 13.08 provides a non-exhaustive list of offenses that will subject an employee to removal. Among these are "neglect of duty," demonstrated by a failure to follow applicable procedures, and "failure of good behavior," demonstrated by a pattern of behavior that creates a hostile, intimidating work environment.

**{¶7}** A human resource representative conducted the pre-disciplinary conference, and McCollins was afforded an opportunity to provide an explanation and information about the allegations against her. After hearing the evidence, the human resource representative sent a report and recommendation to the director of human resources. The human resource director met with the county executive, who has the power and duty to "appoint, suspend, discipline and remove County personnel."[1]

**{¶8}** The County Executive imposed a five-day suspension and a mandatory "Last Chance Agreement" in lieu of removal. The director of human resources subsequently served McCollins with the discipline order titled "Suspension with a Last Chance Agreement," which included a copy of the Last Chance Agreement. The notice states, in relevant part:

> This letter is notify you that you will serve a 5-day suspension from the position of Investigator II, with the Cuyahoga County Medical Examiner's Office, effective November 6, 7 and 8, 9, and 13, 2011. The offense would have resulted in a removal, but the discipline has been reduced to include a mandatory Last Chance Agreement.
> \*     \*     \*
> Your disciplinary history and behavior in the above noted instances is considered so unacceptable that any future infraction or violation of the mandatory Last Chance Agreement will result in your removal from County employment.

The order also provided notice of McCollins's right to appeal this disciplinary action, but Collins did not appeal.

---

[1] Article I, Section 2.03(1), Cuyahoga County Charter.

**{¶9}** The Last Chance Agreement contained a list of terms, including a requirement that McCollins participate in dispute resolution training. The agreement also provided, in relevant part, the following terms:

> 1. The Employee shall be suspended for five (5) days without pay. The Employee waives any rights she may have to the Cuyahoga County Human Resource Commission.

> \*    \*    \*

> 10. Employee hereby releases and forever discharges the County, its officers, and employees from any and all liability that has or may have arisen from this matter, including, but not limited to any claims arising under any and all local, state or federal laws. Employee releases the County from any liability arising under Title VII of the Civil Rights Act of 1964, the Ohio Civil Rights Act, the Americans with Disabilities Act, the Age Discrimination in Employment Act (ADEA), and any common law actions including but not limited to wrongful discharge and defamation claims. Notwithstanding the above, Workers' Compensation claims and claims newly arising after the date that this agreement is executed are not waived.

**{¶10}** McCollins served the five-day suspension and returned to work, but never signed the Last Chance Agreement. After a few weeks, Brown from human resources, contacted McCollins to inquire if she had signed the agreement. McCollins responded that she needed more time to review the agreement with someone and that she would give Brown an answer on Monday. A few days later, McCollins returned the agreement unsigned. Radine Brown from human resources sent McCollins a letter that stated, in part:

> The County has not received the signed Last Chance Agreement pursuant to the disciplinary order dated October 28, 2011. If we are not in receipt of the signed Agreement by the close of business on Wednesday, December 14, 2011, the County will be moving forward with the termination of your employment. Please contact me immediately.

{¶11} McCollins never responded to this letter. As a result, Elise Hara ("Hara"), the director of employment counsel in the department of human resources, served McCollins with a letter informing her that she was removed from the position of Investigator II with the CCMEO effective December 19, 2011.

{¶12} McCollins appealed the disciplinary action to the Personnel Review Commission.[2] Following a hearing, the hearing officer recommended the Commission affirm McCollins's removal. After reviewing the evidence, the parties' briefs, and McCollins's objections, the Commission issued its final order affirming McCollins's removal. On appeal, the common pleas court affirmed the Commission's order. McCollins now appeals to this court and raises three assignments of error.

**Standard of Review**

{¶13} In an administrative appeal, the common pleas court considers the "whole record," including any new or additional evidence admitted under R.C. 2506.03, and determines whether the administrative order is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence. *Henley v. Youngstown Bd. of Zoning Appeals*, 90 Ohio St.3d 142,

---

[2] Article IX 9.01 of the Cuyahoga County Charter establishes the Personnel Review Commission, which serves the role of a civil service commission. The Commission hears appeals from employment actions and has "responsibility for the resolution or disposition of all personnel matters, with authority to appoint hearing officers to hear all employee appeals previously under the jurisdiction of the State Personnel Board of Review." Article IX, Section 9.02(1), Cuyahoga County Charter.

147, 735 N.E.2d 433 (2000). A common pleas court must "not substitute its judgment for that of an administrative board * * * unless the court finds that there is not a preponderance of reliable, probative and substantial evidence to support the board's decision." *Kisil v. Sandusky*, 12 Ohio St.3d 30, 34, 465 N.E.2d 848 (1984).

{¶14} When a court of appeals reviews a common pleas decision in an administrative appeal, its standard of review is more limited than that employed by the common pleas court. *Henley* at 147. The court of appeals reviews the common pleas court's judgment only for "questions of law." *Id.* Among the questions of law the court must decide includes the determination as to whether the common pleas court abused its discretion. *Kisil* at 34.

{¶15} An appellate court does not weigh the preponderance of substantial, reliable, and probative evidence. *Kisil* at 34, fn. 4. It must therefore affirm the trial court's decision, unless it finds, as a matter of law, that the lower court's decision is not supported by a preponderance of reliable, probative, and substantial evidence. *Kisil* at 34.

### Last Chance Agreement

{¶16} In the first assignment of error, McCollins argues the trial court abused its discretion by affirming the Commission's order terminating her employment. She contends her removal was contrary to law because it violated R.C. 124.34's[3] requirement

---

[3] R.C. 124.34 outlines the procedures that must be followed before a classified employee may be removed from employment. It does not expressly state that Last Chance Agreements must be consensual. The statute and case law treat Last Chance Agreements like any other contract where the employer agrees to allow the employee to remain employed provided the employee agrees to comply by

that Last Chance Agreements must be consensual.  She also asserts the Last Chance Agreement would have forced her to drop claims she had against the county, including an EEOC charge and her lawsuit against the county in federal court for alleged violations of the Fair Labor Standards Act.

{¶17} However, the language of the Last Chance Agreement provides that McCollins's waiver applied only to claims arising from the disciplinary action taken in this case.  Paragraph ten of the Last Chance Agreement, which provides the waiver to claims "arising under any local, state, and federal laws," expressly states that McCollins would release the county "from any and all liability that has or may have arisen *from this matter*." (Emphasis added.)  There is no language stating that McCollins was waiving currently pending claims arising from other matters.  Therefore, the Last Chance Agreement would have no bearing on McCollins's EEOC claim or her federal lawsuit.

{¶18} McCollins cites *Trumbull Cty. Sheriff's Office v. Ohio Patrolmen's Benevolent Assn.,* 11th Dist. Trumbull No. 2002-T-0137, 2003-Ohio-7207, in support of her argument that the Last Chance Agreement was unlawful.  In *Trumbull Cty.*, a corrections officer violated rules of the sheriff's office and of the collective bargaining agreement between his collective bargaining unit and the sheriff.  As part of his discipline, he entered into a Last Chance Agreement.  *Id*. at ¶ 6.  However, the officer

---

the terms of the agreement.  The agreement protects the employee because the employer may only terminate the employment if the employee violates the terms of the agreement. R.C. 124.34(B).

continued to violate the rules, and the sheriff terminated his employment for violating the terms of the Last Chance Agreement. *Id*. at ¶ 8.

{¶19} The corrections officer appealed, and the case went to arbitration where an arbitrator reinstated his employment. The sheriff's office filed a motion to vacate the arbitration award in the common pleas court, and the court reinstated the termination. On appeal, the appellate court found the arbitrator's award conflicted with the express terms of the Last Chance Agreement. *Id*. at ¶ 31. The appellate court also found there was just cause for the officer's termination, and the trial court properly exercised its discretion when it reinstated the sheriff's decision to terminate the officer's employment. *Id*. at ¶ 36.

{¶20} *Trumbull Cty*. differs from the instant case in that the employee not only signed a Last Chance Agreement, his removal was based on his violation of the terms of that agreement. In the case before us, McCollins never signed the Last Chance Agreement. She never agreed to its terms. Therefore, her dismissal was not based on a violation of the Last Chance Agreement.

{¶21} On this point, *Clay v. Licking Cty. Prosecutor*, 5th Dist. Licking No. 02CA00011, 2002-Ohio-4243, is instructive. In *Clay*, the county prosecutor imposed a suspension with a mandatory Last Chance Agreement on a secretary. The prosecutor served the secretary with a memorandum outlining the disciplinary action, including the Last Chance Agreement. The secretary acknowledged receipt of the notice by signing the memorandum. However, she refused to sign the Last Chance Agreement, and as a result, she was removed from her employment.

{¶22} On appeal, the secretary argued the termination violated her constitutional right to due process because she was discharged without a pre-disciplinary hearing. Classified employees hold a property interest in their employment, which requires they be afforded due process prior to termination. *Cleveland Bd. of Edn. v. Loudermill*, 470 U.S. 532, 538, 105 S.Ct. 1487, 84 L.E.2d 494 (1985). Due process guarantees that an individual be given notice and an opportunity to be heard before he is deprived of any significant property interest. *Id.*

{¶23} In affirming the secretary's removal, the *Clay* court found that the secretary was aware of the charges being brought against her, and was given more than one opportunity to respond to the charges. *Clay* at ¶ 13. The court held that because the employee failed to sign the Last Chance Agreement, the memorandum outlining the disciplinary action was "not consummated," and the employer "was free to discipline appellant as he deemed necessary." The court further stated that the employer "was not bound or required to impose the two week suspension * * * [and] was free to terminate appellant." *Id*. at ¶ 16.

{¶24} In a similar case, the Third Circuit Court of Appeals affirmed the termination of an employee for refusing to sign a Last Chance Agreement. *Bond v. Bethlehem*, 505 Fed. Appx. 163, 2012 U.S. App. LEXIS 24034, 116 Fair Empl. Prac. Cas. (BNA) 1075 (2012). In *Bond*, the employee argued that the pre-disciplinary hearing applied only to his suspension, and that he was entitled to a second hearing before he could be lawfully terminated. As in *Clay*, the *Bond* court found no due process violation in the employee's

removal because (1) his suspension and termination were derived from the same events, (2) the employee received notice of possible termination, and (3) he was not entitled to a second hearing. *Id*. at *9.

{¶25} In this case, McCollins attended a pre-disciplinary hearing and responded to the allegations against her before any disciplinary action was taken. Following the hearing, she received notice of her five-day suspension and Last Chance Agreement. The notice provided: "The offense would have resulted in a removal, but the discipline has been reduced to include a mandatory Last Chance Agreement."

{¶26} McCollins argues her removal violated R.C. 124.34's requirement that Last Chance Agreements be consensual. She also contends that her failure to sign the Last Chance Agreement is an independent act of malfeasance that required written notice that such conduct would result in discipline. She is mistaken.

{¶27} Although the Last Chance Agreement was described as "mandatory," it was mandatory only insofar as it was required in order for her maintain her employment. She was free to agree to the terms of the agreement and remain employed, or refuse the agreement, and accept termination instead. As in *Bond*, 505 Fed. Appx. 163, 2012 U.S. App. LEXIS 24034, 116 Fair Empl. Prac. Cas. 1075, McCollins was not entitled to a separate notice and hearing for failure to sign the Last Chance Agreement because her suspension and termination were derived from the same events. Indeed, the disciplinary notice served on McCollins informing her of the suspension and Last Chance Agreement included notice of her right to appeal "this action," i.e., the choice of serving a suspension

and signing a Last Chance Agreement, or immediate termination. McCollins did not file a timely appeal of this disciplinary action at that time.

{¶28} Furthermore, she knew her failure to sign the Last Chance Agreement could result in termination. She admitted at the administrative hearing that her superiors advised her that failure to sign the Last Chance Agreement would result in her removal. (Tr. 147.) Any doubt about her knowledge of the consequences of her refusal to sign the agreement is dispelled by the fact that Brown sent her written notice that she must sign the agreement by a certain date or face termination.

{¶29} The trial court's decision is supported by a preponderance of reliable, probative, and substantial evidence. We therefore find that the trial court acted within its discretion when it affirmed the Commission's decision to remove McCollins.

## The Merger and Bar Rule

{¶30} In the second assignment of error, McCollins argues the Commission's decision to remove McCollins was arbitary, illegal, and unconstitutional because she was terminated for conduct that occurred after that date on which she received the notice of discipline. She contends her termination for refusing to sign the Last Chance Agreement violated the Commission's "merger and bar" rule.

{¶31} Human Resource Commission Rule 6.03, titled "Merger and Bar" states:

> All incidents that occurred prior to the incident for which a non-oral disciplinary action is being imposed, of which the Employer has knowledge and for which an employee could be disciplined, are merged into the non-oral discipline imposed by the appointing authority. Incidents occurring after the incident for which a non-oral disciplinary action is being

imposed, but prior to the issuance of the non-oral disciplinary order, are not merged and may form the basis for subsequent discipline.

{¶32} As previously stated, McCollins's five-day suspension and her termination were derived from the same events. The termination was an option provided in the disciplinary action if McCollins chose to reject the Last Chance Agreement. The Last Chance Agreement was included in the notice of discipline she received with the five-day suspension. It was not a new sanction imposed for some new offense. It therefore did not violate the merger and bar rule.

{¶33} The second assignment of error is overruled.

### Due Process

{¶34} In the third assignment of error, McCollins argues the Commission violated her right to due process because it denied her of her right to a second pre-disciplinary hearing to address her refusal to sign the Last Chance Agreement. She contends she should have been afforded an opportunity to explain why she had not executed the document.

{¶35} Again, McCollins's five-day suspension and termination were derived from the same events. McCollins received notice of possible termination when she received the notice of discipline and Last Chance Agreement. Therefore, she was not entitled to a second hearing. *Bond*, 505 Fed. Appx. 163, 2012 U.S. App. LEXIS 24034, 116 Fair Empl. Prac. Cas. 1075, at * 9.

{¶36} The third assignment of error is overruled.

{¶37} The trial court's judgment is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


EILEEN T. GALLAGHER, JUDGE

KATHLEEN ANN KEOUGH, P.J., and
TIM McCORMACK, J., CONCUR